# EXHIBIT A

**DON KING PRODUCTIONS, INC.**
**NET A/R - JOSEPH AGBEKO**
**AS OF 02/01/11**

| DESCRIPTION | DATE | REFERENCE CHECK # | AMOUNT |
|---|---|---|---|
| **2009 TRANSACTIONS** | | | |
| LOAN | 02/04/2009 | 6704 | 1,500.00 |
| ADVANCE/LOAN | 03/26/2009 | 6725 | 1,000.00 |
| JUAN GONZALEZ | 05/29/2009 | 102585 | 138.88 |
| DANA JAMISON (LOAN ADAMA) | 07/11/2009 | 102811 | 200.00 |
| JUAN GONZALEZ | 07/21/2009 | 102761 | 309.00 |
| SUNTRUST BANKCARD | 09/10/2009 | | 179.60 |
| CASH FROM DON KING | 09/14/2009 | CASH | 500.00 |
| JUAN GONZALEZ (MEDICAL) | 11/09/2009 | 103464 | 109.00 |
| JUAN GONZALEZ (HOTEL) | 11/09/2009 | 103464 | 156.90 |
| JUAN GONZALEZ (AIRFARE) | 11/09/2009 | 103464 | 388.39 |
| JUAN GONZALEZ (CAR RENTAL) | 11/09/2009 | 103464 | 2,928.40 |
| **BALANCE AT 12/31/09** | | | 7,408.17 |
| **2010 TRANSACTIONS** | | | |
| LOAN/ADV ON PURSE | 03/02/2010 | 6879 | 5,000.00 |
| LOAN/ADV ON PURSE | 04/07/2010 | 6887 | 1,500.00 |
| LOAN | 07/28/2010 | 6927 | 1,000.00 |
| W UNION FROM DJ | 08/26/2010 | | 1,100.00 |
| ADVANCE ON 11/06/10 PURSE | 08/31/2010 | 104517 | 2,000.00 |
| LOAN | 09/21/2010 | 104925 | 20,000.00 |
| LOAN | 09/21/2010 | 104927 | 5,000.00 |
| ADVANCE | 10/15/2010 | 6982 | 10,000.00 |
| ADVANCE/TRAINING | 11/10/2010 | 6972 | 11,000.00 |
| W UNION (BAGGAGE FEES) | 11/23/2010 | | 254.00 |
| ADVANCE/TRAINING | 12/02/2010 | 6982 | 2,000.00 |
| REIMB SCOLPINO ADVANCE | 12/11/2010 | 105431 | 1,000.00 |
| SUTNRUST BANKCARD | 12/31/2010 | | 601.30 |
| **BALANCE AS OF 12/31/10** | | | 67,863.47 |
| **2011 TRANSACTIONS** | | | |
| ADVANCE/LOAN | 02/01/2011 | 7006 | 3,000.00 |
| **BALANCE AS OF 02/01/11** | | | 70,863.47 |

# EXHIBIT B

Joseph "King Kong" Agbeko
Tom Moran
January 10th, 2012

Don King, Don King Productions
Dana Jamison, Senior Vice President
501 Fairway Drive
Deerfield Beach, Florida 33441

Dear Don,

    This letter will serve legal notice as an **Official Boxer Request** for full financial disclosure under the **Muhammad Ali Boxing Reform Act**. Professional boxer Joseph "King Kong" Agbeko is demanding accurate, complete and prompt disclosure of all Don King, Don King Productions (DKP) *"compensation and/or consideration"* for all fights involving Agbeko since August, 2007. While the Ali Law does not require the fighter to ask for revenue disclosure (it MUST be done automatically by the promoter), we're making this demand for a comprehensive, coherent and detailed reporting of all promoter revenues that Mr. Agbeko is legally entitled to and HAS NOT received.

    We're certain that Don, DKP and DKP Senior Vice President Dana Jamison are fully aware of their legal responsibility to disclose pursuant to Section (b) (1) of the Muhammad Ali Law, which makes clear that *"A promoter shall not be entitled to receive any compensation directly or indirectly in connection with a boxing match until it provides to the boxer it promotes. (1) the amounts of any compensation or consideration that a promoter has contracted to receive from such match;"*

    It's appears quite evident that King, DKP and Jamison willfully and knowingly have violated federal law by failing to properly, promptly and completely disclose any and all revenues they received in regard to Joseph Agbeko. In the process, DKP, King and Jamison have defrauded Agbeko of significant revenues to which he was entitled and clearly would have bargained for had said revenues been fully and properly disclosed in a time sensitive manner as the Ali Act clearly requires. We also believe that in blatant violation of the Ali Law, Agbeko was COERCED into signing additional promotional contracts with King and DKP.

    We additionally note that *"Under the law, a promoter who knowingly fails to make a required financial disclosure to a fighter is guilty of a crime punishable by up to one year in prison and a fine of $100,000."* The unfortunate lack of Ali Law enforcement action taken by the Department of Justice, U.S. Attorneys and state attorney generals could and should easily be corrected, and Mr. King would prove the ideal target.

    As is well documented and publicly acknowledged in countless print articles, TV specials and Congressional testimony at the time, it was the unscrupulous and deceitful business practices of particularly Don King that gave rise to the need for federal regulation in

1

0002/0004

boxing and the Muhammad Ali Law to begin with. As the Ali law states it was designed *"to protect the rights and welfare of professional boxers on an interstate basis by preventing certain exploitive, oppressive, and unethical business practices;"*

We would expect these Ali Law revenue disclosure statements to include any and all revenue and consideration, including complete details of the Showtime Bantamweight Tournament revenues. And again, we would emphasize COMPLETE disclosure of any money received whether directly or indirectly by Don King, Don King Productions or any other Don King associate, employee or representative. This would include but not be limited to any arrangement, contract, agreement or consideration exchange with Showtime Network, Gary Shaw, Gary Shaw Promotions, Golden Boy Promotions, Main Events and/or any casino, site fee, ticket sales, sponsorships and other related consideration on any card or time period covered by Agbeko fights.

This Ali Law disclosure must cover the following fights, Agbeko vs. Luis Alberto Perez (Showtime Network, 9-29-2007) in an IBF World Bantamweight Title fight in Sacramento, California; vs. William Gonzalez (12-11-08) in an IBF World Bantamweight title defense in Newark, New Jersey; vs. Vic Darchinyan (Showtime Network, 7-11-2009) in an IBF World Bantamweight title defense in Sunrise, Florida; vs. Yonnhy Perez (Showtime Network, 10-31-2009) in an IBF World Bantamweight title defense in Las Vegas, Nevada; vs. Yonnhy Perez (Showtime Network, 12-11-2010) in an IBF World Bantamweight title challenge in Tacoma, Washington; vs. Abner Mares (Showtime Network, 8-13-2011) in an IBF Bantamweight title defense in Las Vegas, Nevada; and vs. Abner Mares (Showtime Network, 12-3-2011) in an IBF Bantamweight title challenge in Anaheim, California.

It is our belief that DKP, King and their employees have deprived Joseph Agbeko of significant compensation by failing to properly disclose revenues received by King. We believe DKP and Don's knowing failure to disclose represented serious fraud and breach of contract since they intended to deprive Agbeko of revenue numbers that he was legally entitled to see and certainly would have used to bargain for better purses, as the Ali Law intended. In the process, DKP, King and Jamison intentionally caused Agbeko severe economic injury.

If Mr. Agbeko does not receive the full and complete revenue disclosure to which he is legally entitled under U.S. Law by close of business on January 25th, 2012, we will consider ALL Agbeko promotional contracts with Don King and Don King Productions to be **TERMINATED** due to DKP and King's substantial material breach, fraud and severe non-performance.

Also pursuant to the Ali Law disclosure requirements, we're officially requesting full and complete accounting breakdowns of any and all deductions made from Mr. Agbeko's past purses under King. We would expect this to include any and all supporting documentation, contracts, agreements and authorization from Mr. Agbeko for the deductions taken.



2

In his attempt to be treated fairly and paid properly, Mr. Agbeko will now be advised by Tom Moran, who has a long history of understanding the tactics and misdeeds of Mr. King in his treatment of boxers.

To clarify, Don King, DKP are being offered a one-time opportunity to come clean and rectify their criminal failure to disclose by meeting our generous yet immediate deadline for full Ali Law disclosure. Agebko wants FULL DISCLOSURE to be sent to BOTH addresses listed below. Full coherent, effective and usable promoter revenue disclosure is the obvious point of the Ali law. This was certainly not done. This is a peremptory demand and any attempt to delay, debate or confuse the already late DISCLOSURE will TERMINATE the promotional contract and trigger further fighter initiated action.

Our first preference in this dispute would be a quiet and quick resolution that allows Mr. Agbeko to immediately and independently proceed with his career, with a financial settlement reflecting a percentage of the money we believe was unfairly taken from him.

Moran recognizes the serious nature of the charges against Mr. King and his standard response to boxers standing up to him. As an old adversary of King, Moran would remind King that as in the past "threats to my life, bribery and coercion" will not work.

Should DKP choose to challenge, Moran would like to outline his three-tiered counter strategy, combining a legal, criminal and publicity campaign. As the late great King adversary and Moran mentor Jack Newfield would preach the "Joe Frazier method" for confronting wrongdoing, "Keep coming forward. Don't get discouraged. Be relentless. Don't stop moving your hands. Break the other guy's will."

In regards to a legal action, our first efforts would focus on an immediate demand for Mr. King's deposition, asking the Court to recognize the urgency of the matter and minimizing the standard delay and obfuscate strategy of the often-sued King.

We would welcome a thorough examination of ALL DKP and King's financial records by our forensic accounting team. Thankfully, if need be, we can also rehire a prominent New York attorney who successfully worked with us on previous boxing cases, complimenting his leadership by simultaneously mobilizing an energetic, ready, willing and able law school research class at a prominent university Sports Law Clinic.

We'll also file a criminal complaint with the appropriate U.S. Attorney's Economic Crime Unit and the complimenting FBI office seeking a robust enforcement of the Ali Law using Don King as the prime example. Though aging out, as a chronic and repeat offender, King should be delivered the harshest punishment possible. We'd welcome the opportunity to organize the endless list of mostly black boxers robbed and cheated by King to serve as references.



3

0004/0004

Using the latest innovations in media and branding, we would also work diligently on a publicity campaign focusing on King's long career exploiting boxers, providing clear contrast to the phony flag waving façade Mr. King has carefully built outside the boxing arena. Ideally, this exposure would generate greater Ali Law enforcement while providing an empowerment example for other exploited boxers.

Moran apologizes for the harsh and direct tone and length of this letter, but to avoid confusion and wasted efforts, he hopes to make our entire position clear. He would be happy and quite willing to discuss the dispute with Mr. King. He understands any animosity felt by Mr. King. Our sole intention is to fully protect the boxing career and financial future of Joseph Agbeko. Moran may be contacted at SlainteTM@gmail.com, or 267 251-6109.

Sincerely,


JOSEPH "KING KONG" AGBEKO
95 MALCOLM X BOULEVARD APT 3J
NEW YORK, NY 10026


TOM MORAN
PHILADELPHIA WORLDWIDE
402 EXECUTIVE DRIVE
LANGHORNE PA 19047
JANUARY 10TH, 2012

4

# EXHIBIT C



# DON KING PRODUCTIONS, INC.

## DON KING PRODUCTIONS, INC. DISCLOSURES
## PURSUANT TO THE MUHAMMAD ALI BOXING REFORM ACT

Pursuant to Section 13(b)(2) of the Muhammad Ali Boxing Reform Act (the "Act"), Don King Productions, Inc. ("DKP") is providing you with this schedule of all fees, charges and expenses that will be deducted from your purse by DKP for the October 31, 2009 event being conducted at the Treasure Island Hotel and Casino, Las Vegas, Nevada (the "Event"):

**JOSEPH AGBEKO:**

| | | |
|---|---|---|
| **TOTAL PURSE:** | $145,000.00 + 20,000.00 | |
| **DEDUCTIONS:** | 23,870.00 | **1042 Tax Withholding** |
| | 4,950.00 | **IBF Sanction Fee** |
| | 3,300.00 | **IBF Pension – Lincoln National Life** |
| | 45,000.00 | **Advances/Training** |
| | 14,500.00 | **Addy Adama – Trainer** |
| | 7,000.00 | **Bismark Morales – Assist. Trainer** |
| | 2,000.00 | **Leonardo De Jesus – Cut man** |
| | 175.00 | **Licenses/Incidentals** |
| | 12,000.00 | **NSAC – Anti-Doping** |
| | 39,600.00 | **Management fee – 33% of $120,000-Vinnie Scolpino** |
| **BALANCE DUE YOU** | **$12,605.00** | |

The fees, expenses and charges contained in this document are good faith estimates of the amounts that DKP anticipates assessing against you at the conclusion of the Event. DKP respectfully reserves the right to amend and/or supplement this disclosure.

## SECTION 13(b)(3) DISCLOSURE

Additionally, pursuant to Section 13(b)(3) of the Act, DKP hereby submits the following disclosure statement to you setting forth the amounts that are being withheld from your purse contrary to a previous agreement between DKP and you and/or a purse bid held for the match which is being held as part of the Event.

1. None

To the best of our knowledge, information and belief, the foregoing represents all of the information responsive to such disclosure. DKP respectfully reserves the right to amend and/or supplement this disclosure.

Don King Productions, Inc.

By: Dana Jamison
**Senior Vice President, Boxing Operations**

501 Fairway Drive, Deerfield Beach, FL 33441
Telephone: (954) 418-5800 ◼ Telefax: (954) 418-0166

17424

## DON KING PRODUCTIONS, INC.
501 FAIRWAY DRIVE
DEERFIELD BEACH, FLORIDA 33441-1865

**103546**

63-215
631

DATE _OCT 31, 2009_

PAY TO THE ORDER OF _JOSEPH AGBEKO_ _____ $ _12,605._

_Twelve Thousand Six Hundred Five + No/100_ _____ DOLLARS

**DON KING PRODUCTIONS, INC.**

SUNTRUST BANK
ACH RT# 061000104

_NON-NEGOTIABLE_
AUTHORIZED SIGNATURES

⑆103546⑆ ⑇063107152⑇ 04910020309231⑈

70480

**DON KING PRODUCTIONS, INC.**
501 FAIRWAY DRIVE
DEERFIELD BEACH, FLORIDA 33441-1865

DETACH AND RETAIN THIS STATEMENT.
THE ATTACHED CHECK IS IN PAYMENT OF ITEMS DESCRIBED BELOW.
IF NOT CORRECT PLEASE NOTIFY US PROMPTLY. NO RECEIPT DESIRED.

| DATE | INVOICE NO. | DESCRIPTION | AMOUNT | PARTICULARS | DEDUCTIONS AMOUNT | NET AMOUNT |
|------|-------------|-------------|--------|-------------|-------------------|------------|
| 10/31/09 | | PURSE/TRAINING | $145,000.00 | | | |
| | | | 20,000.00 | | | |
| | | LESS: 10% TAX W/H | | | (23,870.00) | |
| | | IBF SANCTION FEE | | | (4,950.00) | |
| | | IBF PENSION | | | (3,300.00) | |
| | | ADVANCES/TRAINING | | | (45,000.00) | |
| | | ADDIT. ADMIN-TRAINER | | | (4,26.00) | |
| | | BISMARK MORALES-ASS TR | | | (7,800.00) | |
| | | LEONARD JESUS | | | (2,000.00) | |
| | | CHRISTI NCDONALD | | | (12,000.00) | |
| | | ENT/ADD EXS | | | (39,550.00) | |
| | | MGT FEE | | | | |

# EXHIBIT D



# DON KING PRODUCTIONS, INC.

## DON KING PRODUCTIONS, INC. DISCLOSURES
## PURSUANT TO THE MUHAMMAD ALI BOXING REFORM ACT

Pursuant to Section 13(b)(2) of the Muhammad Ali Boxing Reform Act (the "Act"), Don King Productions, Inc. ("DKP") is providing you with this schedule of all fees, charges and expenses that will be deducted from your purse by DKP for the December 11, 2010 event being conducted at the Emerald Queen Casino in Tacoma, Washington (the "Event"):

**JOSEPH AGBEKO**

**PURSE:**          $50,000.00

| DEDUCTIONS: | | |
|---|---|---|
| | 16,500.00 | Manager fee – Vincent Scolpino |
| | 15,000.00 | 30 % 1042 Tax withholding |
| | 2,736.00 | Upgrade air ticket |
| | 1,500.00 | IBF Sanction fee – 3% |
| | 1,000.00 | Lincoln National Life Insurance |

**BALANCE DUE YOU**     $13,264.00

The fees, expenses and charges contained in this document are good faith estimates of the amounts that DKP anticipates assessing against you at the conclusion of the Event. DKP respectfully reserves the right to amend and/or supplement this disclosure.

## SECTION 13(b)(3) DISCLOSURE

Additionally, pursuant to Section 13(b)(3) of the Act, DKP hereby submits the following disclosure statement to you setting forth the amounts that are being withheld from your purse contrary to a previous agreement between DKP and you and/or a purse bid held for the match which is being held as part of the Event.

1. None

To the best of our knowledge, information and belief, the foregoing represents all of the information responsive to such disclosure. DKP respectfully reserves the right to amend and/or supplement this disclosure.

Don King Productions, Inc.

By: Dana Jamison
Senior Vice President, Boxing Operations

501 Fairway Drive, Deerfield Beach, FL 33441
Telephone: (954) 418-5800 ■ Telefax: (954) 418-0166

# EXHIBIT E



# DON KING PRODUCTIONS, INC.

### DON KING PRODUCTIONS, INC. DISCLOSURES
### PURSUANT TO THE MUHAMMAD ALI BOXING REFORM ACT

Pursuant to Section 13(b)(2) of the Muhammad Ali Boxing Reform Act (the "Act"), Don King Productions, Inc. ("DKP") is providing you with this schedule of all fees, charges and expenses that will be deducted from your purse by DKP for the August 13, 2011 event being conducted at the Hard Rock Hotel & Casino, Las Vegas, Nevada (the "Event"):

**JOSEPH AGBEKO**
**TOTAL PURSE:**             $130,000.00

| DEDUCTIONS: | | |
|---|---|---|
| | 40,400.00 | Vincent Scolpino or Joseph Agbeko |
| | 13,000.00 | Adama Addy – Trainer – 10% |
| | 10,400.00 | Bismarck Bruce – CoTrainer – 8% |
| | 2,000.00 | Al Bonanni - Cutman |
| | 3,900.00 | IBF Sanction fee |
| | 2,600.00 | IBF Pension fee |
| | 13,000.00 | Anti-doping fee – NSAC and/or J. Agbeko |
| | 7,360.00 | 1042 Tax Withholding |

**BALANCE DUE YOU**      **$37,340.00**

The fees, expenses and charges contained in this document are good faith estimates of the amounts that DKP anticipates assessing against you at the conclusion of the Event. DKP respectfully reserves the right to amend and/or supplement this disclosure.

### SECTION 13(b)(3) DISCLOSURE

Additionally, pursuant to Section 13(b)(3) of the Act, DKP hereby submits the following disclosure statement to you setting forth the amounts that are being withheld from your purse contrary to a previous agreement between DKP and you and/or a purse bid held for the match which is being held as part of the Event.

1. None

To the best of our knowledge, information and belief, the foregoing represents all of the information responsive to such disclosure. DKP respectfully reserves the right to amend and/or supplement this disclosure.

Don King Productions, Inc.

By: Dana Jamison
Senior Vice President, Boxing Operations

501 Fairway Drive, Deerfield Beach, FL 33441
Telephone: (954) 418-5800 ▪ Telefax: (954) 418-0166

# EXHIBIT F

NEVADA STATE ATHLETIC COMMISSION

# PAYMENT VERIFICATION AND BREAKDOWN SHEET

Contestant's or manager's signature, when subscribed hereto, will constitute receipt, in full, of payment for contest or exhibition held or given under the terms of contract heretofore filed with the State Athletic

Commission of Nevada at Hard Rock Hotel / Don King Productions on the 13th day of August 20 11

(Name of Club/Promoter)

| NAME | GROSS PURSE | LICENSES | SANCTION FEES | APPROVED ADVANCES | MISCELLAN-EOUS | *DRUG TESTING WITHHOLDING | **INCIDENTALS | NET CONTESTANT'S SHARE | NET MANAGER'S SHARE | BOXER'S SIGNATURE | MANAGER'S SIGNATURE |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 1. Joseph Agbeko | 130,000 | 125 | IDF 3900 | | Nexium 2600 | 13,000 | 1475 Tyno | 34,840 - | 13,600 Abrani 10,400 Abrani 2,100 - Anwari 42,900 - Seeling | | |
| 2. Eric Molina | 10,000 | 50 | | | | | inc 200 - | 9800 - | | | 0 |
| 3. Warren Browning | 9,500 | 50 | | | 200 Eric 225 Eric 99 Abel 8 | | | 9500 - | | | |
| 4. Angelo Santana | 7,500 | 175 | | TCX w/h 1500 | | | inc 200 - | 6801 - | | | |
| 5. Adaev Ramzan | 5,000 | 75 | | | inc 300 | | | 3300 - | | | |
| 6. | | | | | | | | | | | |
| 7. | | | | | | | | | | | |
| 8. | | | | | | | | | | | |
| 9. | | | | | | | | | | | |
| 10. | | | | | | | | | | | |
| 11. | | | | | | | | | | | |
| 12. | | | | | | | | | | | |
| 13. | | | | | | | | | | | |
| 14. | | | | | | | | | | | |
| 15. | | | | | | | | | | | |
| 16. | | | | | | | | | | | |

*This amount will be returned to you when the Commission receives the negative laboratory report.

**This amount will be given to you by the promoter – See attached letter.

Payment witnessed by _____

(Commission Representative)

# EXHIBIT G

AGBEKO/MARES -- TOTAL PURSE - $130,000 (PLUS $20,000 BONUS IF HE WINS)

$19,294.93 -- loans and advances not deducted from December bout
$3,000 -- wire transfer -- sent 2/1/2011
$1,000 -- reimburse Vinnie Scolpino advance
$9,000 -- airfares for children + $9,000 if he returns to Ghana
$1,500 -- reimburse Vinnie scolpino for Cutman Lenny De Jesus for last fight
$3,900 -- IBF sanction fee 3% - $3,900
$42,900 -- Vinnie Scolpino -- manager fee — *Joss Travel Training.*
$2,600 -- IBF Lincoln National Life -- pension
$39,000 -- 1042 withholding

Net of $ -1,194.93 unless he does a CWA and reduces his withholding

Agbeko -- Perez purse
$50,000 + $30,000 training + $20,000 + $15,000 bonus

Received payment in full

# EXHIBIT H



# DON KING PRODUCTIONS, INC.

### DON KING PRODUCTIONS, INC. DISCLOSURES
### PURSUANT TO THE MUHAMMAD ALI BOXING REFORM ACT

Pursuant to Section 13(b)(2) of the Muhammad Ali Boxing Reform Act (the "Act"), Don King Productions, Inc. ("DKP") is providing you with this schedule of all fees, charges and expenses that will be deducted from your purse by DKP for the December 3, 2011 event being conducted at the Honda Center in Anaheim, California (the "Event"):

**JOSEPH AGBEKO**

PURSE:                    $150,000.00 + $40,000.00 Training Expenses

DEDUCTIONS:
| | |
|---|---|
| 49,500.00 | Manager – Vincent Scolpino – 33% |
| 15,000.00 | Trainer – Adama Addy – 10% |
| 12,000.00 | Assistant Trainer – Bismarck Bruce |
| 2,000.00 | Cutman – Lenny de Jesus |
| 4,500.00 | IBF Sanction Fee – 3% |
| 3,000.00 | Lincoln National Life Ins – Pension Plan |
| 18,180.00 | 1042 Tax Withholding – CWA |
| 10,500.00 | Franchise Tax Board – 7% |
| 30,000.00 | Advance – Wire transfer |

**BALANCE DUE YOU**          $5,320.00

The fees, expenses and charges contained in this document are good faith estimates of the amounts that DKP anticipates assessing against you at the conclusion of the Event. DKP respectfully reserves the right to amend and/or supplement this disclosure.

### SECTION 13(b)(3) DISCLOSURE

Additionally, pursuant to Section 13(b)(3) of the Act, DKP hereby submits the following disclosure statement to you setting forth the amounts that are being withheld from your purse contrary to a previous agreement between DKP and you and/or a purse bid held for the match which is being held as part of the Event.

1. None

To the best of our knowledge, information and belief, the foregoing represents all of the information responsive to such disclosure. DKP respectfully reserves the right to amend and/or supplement this disclosure.

Don King Productions, Inc.

By: Dana Jamison
Senior Vice President, Boxing Operations

501 Fairway Drive, Deerfield Beach, FL 33441
Telephone: (954) 418-5800 ☒ Telefax: (954) 418-0166

# EXHIBIT I

# DEPARTMENT OF THE TREASURY – INTERNAL REVENUE SERVICE

## CENTRAL WITHHOLDING AGREEMENT
### Joseph Agbeko, (09-453)

Central Withholding Agreement, hereinafter "CWA," effective as of the 11th day of July, 2009 by and between Joseph Agbeko ("Boxer"), Don King Productions, Inc. ("Designated Withholding Agent"), and Program Manager, Collection Policy, Small Business/Self Employed, Internal Revenue Service, Department of the Treasury ("Program Manager"), and the Program Manager's successors in office.

A. WHEREAS, Boxer will be appearing in a prizefight contest in Sunrise, FL, on July 11, 2009 at Staples Center, boxer will receive income generated by the bout;

B. WHEREAS, Boxer is a non-resident alien with respect to the United States;

C. WHERAS, Program Manager, Boxer and Withholding Agent agree that Boxer will be subject to US income tax on bout income; that federal income tax withholding is required thereon under § 1441 of the IRC of 1986 as amended;

D. WHEREAS, Designated Withholding Agent will be withholding and depositing funds for U.S. income taxes per section 1441 of the Internal Revenue Code for the Boxer, with respect to his appearance in the Bout;

E. WHEREAS, Boxer, represents and the Program Manager agrees that Boxer's U.S. income tax liability will be less than 30% of gross income withholding amount provided by section 1441;

F. WHEREAS, Boxer desires to enter into a Central Withholding Agreement (CWA) pursuant to Treas. Reg. 1.1441-4(b)(3);

G. WHERAS, by entering into this CWA, in order to provide security for the required US federal income tax withholding, Boxer designates Withholding Agent, an unrelated third party, to make all required federal tax deposits;

H. WHEREAS, Boxer and Designated Withholding Agent state that during the term of the CWA, Designated Withholding Agent will have the required signatory authority over bank accounts in which US federal income tax withholding will be made;

I. WHEREAS, Boxer and Designated Withholding Agent are entering into this Agreement and are willing to remit or cause to be remitted to the Program Manager, subject to all the terms of this Agreement, the amount specified in paragraph 3(C) below;

J. WHEREAS, the Program Manager represents that as a duly authorized

delegate for the Secretary of the Treasury, the Program Manager is charged by law with the duty of collecting and enforcing the collection of the Internal Revenue taxes, including the above described Federal income tax withholding, and is, therefore, duly authorized to enter into this Agreement; and

K.  WHEREAS, the Program Manager seeks to enter into a voluntary agreement with Boxer, and Designated Withholding Agent which will provide protection of the revenue sufficient to obviate the use of certain remedies provided by the Code, including, but not limited to, termination assessment, jeopardy assessment, and levy.

NOW, THEREFORE, in consideration of the foregoing and the mutual covenants and obligations hereinafter set forth, the parties agree as follows:

1.  The provisions herein below shall be construed as binding upon all signatories to this Agreement, unless the intent to exclude any one or more signatory is clearly set forth in the provisions or is clearly implicit by the terms thereof.

2.  All withholding of US federal income shall be in accordance with IRC § 1441, as modified by this CWA entered into pursuant to Treas. Reg. § 1441-4(b) (3).

3.  A. Boxer and Designated Withholding Agent have affirmatively represented to the Program Manager, upon which representations the Program Manager materially relies, that, (1) the Bout income is U.S. $130,000.00 paid to the boxer; (2) the projected Bout expenses will equal approximately U.S. $50,600.00; (3) the net Bout profit subject to withholding will equal approximately U.S. $79,400.00; as shown in budget dated July 2, 2009 attached as Exhibit A ("Budget"); and (4) the withholding agent is responsible for withholding and depositing the amounts specified in 3(C) and 3(D).

B.  Designated Withholding Agent shall register for Electronic Federal Tax Payment System (EFTPS) deposits with the federal depository and the designated bank and timely make all payments specified in this CWA using EFTPS. Confirmation receipts in respect of the transfer(s) shall be provided to the CWA Program Specialist contemporaneously with said deposit(s). The amount of each such deposit is to be included with each confirmation.

C. Tax deposits are computed based on the Budget. All prior disclosed income, expense and withholding amounts for the current year were considered in this computation. Individual tax liability has been computed using the appropriate filing status. On or before the dates set forth in the below Tax Deposits Schedule, Designated Withholding Agent shall have paid or caused to be paid amounts of withholding as follows:

TAX DEPOSITS SCHEDULE

For Joseph Agbeko, a married person:
July 16, 2009                          $15,340.00

D. Should any income in excess of $130,000.00 accrue to Boxer as a consequence of his participation in the Bout, including but not limited to U.S. pay-per-view, sponsorship, endorsement, and merchandising, Designated Withholding Agent shall notify the CWA Program Specialist within 5 days and the CWA Specialist will advise the Designated Withholding Agent of the additional amount due. The Designated Withholding Agent will withhold and deposit the additional withholding tax as directed prior to payment to Boxer or distribution of said excess amount at the direction of Boxer.

E. Within 30 days of the Bout, Designated Withholding Agent shall submit to the CWA Program Specialist final computation of all of the payments paid to or for the benefit of the Boxer, all expenses associated with the Bout, and all required withholdings in accordance with this CWA (the "Final Accounting"). To the extent not previously deducted and paid over, Designated Withholding Agent shall withhold and remit US federal income tax deposits of any required withholdings regardless of whether all payments due Boxer have been made at that time. As in paragraph B, Designated Withholding Agent shall furnish the CWA Program Specialist the confirmation number regarding such deposit contemporaneously with depositing the requisite amount. Failure to timely provide the final accounting will make the Designated Withholding Agent ineligible to participate in the CWA program as a Designated Withholding Agent until the Designated Withholding Agent provides the final accounting, unless the Program Manager agrees in writing to waive this requirement

4. The Program Manager or designee shall have 40 days from the date of the receipt of the Final Accounting to review the expenses set out thereon and seek explanation of any expenses, which appear to be unusual or excessive.

5. If within such 40-day period the Program Manager or designee finds that any of the expenses of the bout are not deductible as ordinary and necessary pursuant to IRC § 162 or 212, and informs Designated Withholding Agent of the basis of such finding, the parties shall negotiate in good faith in an effort to resolve any such issues of deductibility. If agreement cannot be reached with respect to any particular expense, such expense shall not be taken into account for purposes of determining the net bout income and will be treated as a payment to Boxer on which withholding is required.

6. Providing no agreement is reached with respect to any particular expense, as set forth in paragraph 5, within 40 days from the date of the receipt of the Final Accounting, the CWA Program Specialist shall furnish to Designated Withholding Agent a final computation of the withholding required with respect to Boxer. To the extent not previously deducted and deposited, on or before the 5th day after the submission by the CWA Program Specialist of the final computation, Designated Withholding Agent shall make a U.S. federal income tax deposit of such required withholding tax, regardless of whether Boxer received all payments due from the Bout. As in paragraph 3B, Withholding Agent shall furnish the CWA Program Specialist with the confirmation number contemporaneously with depositing the requisite amount.

7. The parties agree that review of books and records (Final Accounting) pursuant to this CWA shall not constitute an audit for purposes of IRC § 7605.

8. The Program Manager is not required to give notice or to maintain a record of specific contacts, that may be otherwise required by IRC § 7602(c), to Designated Withholding Agent or Boxer, with respect to contacts made with third parties regarding verification of expenses reported in the Final Accounting, as such contacts are authorized by the parties to this CWA.

9. A. Designated Withholding Agent shall reflect all withholdings made pursuant to this CWA on its Form 1042, for the benefit of the Boxer. Designated Withholding Agent agrees to timely file Form 1042 and Form 1042-S. Designated Withholding agent shall timely provide Boxer with a copy of his Form 1042-S reflecting the withholdings made pursuant to the CWA.

B. Upon request, Designated Withholding Agent agrees to provide the CWA Program Specialist with copies of its Form 1042 Return and the Form 1042S Form filed with respect to payments made to Boxer for the periods covered by the CWA.

C. Boxer agrees to timely file Form 1040NR for the current taxable year.

10. Boxer & Designated Withholding agent agrees to notify CWA Program Specialist within 5 days of changes to representations made in the agreement including changes to income and expenses in budget

11. If any material fact represented to the IRS by Boxer and/or Designated Withholding Agent is materially erroneous or inaccurate, then the restrictions and obligations imposed on the Program Manager shall be null and void. Nothing in this Agreement shall bind or limit the Program Manager from performing the obligations imposed upon or delegated to the Program Manager under law, including, but not limited to, institution of jeopardy procedures. The Program Manager agrees that, as long as such circumstances do not exist, that the faithful performance of this Agreement by the parties precludes a finding of jeopardy for assessment or collection of the United States tax liabilities of Boxer, which may arise from the Bout.

This Agreement is made without prejudice to the assertion and/or collection of tax liabilities other than the Federal income tax withholding set forth herein.

IN WITNESS WHEREOF, the signatories hereto have caused this Agreement to be executed by their duly authorized representatives.

Date: 7/9/09   By: _____

Joseph Agbeko                                    Boxer

Date: 7/9/09   By: _____

Printed Name: DANA  JAMISON

Don King Productions, Inc.              Designated Withholding
                                                         Agent

Date: JUL 1 6 2009  By: _____

MJ Moran                                          CWA Program Manager
Collection, Collection Policy
Internal Revenue Service (SB/SE)


Attachment:
Exhibit A

Exhibit A

## Joseph Agbeko
## Sunrise, FL

| Per Budget Provided: | 7/2/2009 | CWA |
|---|---|---|
| Purse | 110,000 | 110,000 |
| Training Reimbursement | - | 20,000 |
| **Total Income:** | **110,000** | **130,000** |
| **Expenses:** | | |
| Manager Fee | 36,300 | 36,300 |
| Trainer Fee | 11,000 | 11,000 |
| IBF Fee | 3,300 | 3,300 |
| Retirement Account | 2,200 | |
| **Total Expenses** | **52,800** | **50,600** |
| **Net Income** | **57,200** | **79,400** |

# EXHIBIT J

| Form **1042-S** | **Foreign Person's U.S. Source Income Subject to Withholding** | | 20**11** | OMB No. 1545-0096 |
|---|---|---|---|---|
| Department of the Treasury Internal Revenue Service | ☐ AMENDED | ☐ PRO-RATA BASIS REPORTING | | **Copy E** for Withholding Agent |

| 1 Income code | 2 Gross income | 3 Withholding allowances | 4 Net income | 5 Tax rate ✱ | 7 Federal tax withheld 33649.00 |
|---|---|---|---|---|---|
| 20 | 325000.00 | | | 6 Exemption code | 8 Withholding by other agents |
| | | | | | 9 Total withholding credit |

| 10 Amount repaid to recipient | 14 Recipient's U.S. TIN, if any ▶ 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 |
|---|---|
| | ☒ SSN or ITIN ☐ EIN ☐ QI-EIN |

| 11 Withholding agent's EIN ▶ 65-0385637 | 15 Recipient's foreign tax identifying number, if any | 16 Country code GH |
|---|---|---|
| ☒ EIN ☐ QI-EIN | | |

| 12a WITHHOLDING AGENT'S name | 17 NQI's/FLOW-THROUGH ENTITY'S name | 18 Country code |
|---|---|---|
| Don King Productions, Inc. | | |

| 12b Address (number and street) | 19a NQI's/Entity's address (number and street) |
|---|---|
| 501 Fairway Drive | |

| 12c Additional address line (room or suite no.) | 19b Additional address line (room or suite no.) |
|---|---|
| | |

| 12d City or town, province or state, country, ZIP or foreign postal code | 19c City or town, province or state, country, ZIP or foreign postal code |
|---|---|
| Deerfield Beach  FL  33441 | |

| 13a RECIPIENT'S name | 13b Recipient code | 20 NQI's/Entity's U.S. TIN, if any ▶ |
|---|---|---|
| Joseph Agbeko | 09 | |

| 13c Address (number and street) | 21 PAYER'S name and TIN (if different from withholding agent's) |
|---|---|
| 1706 Nelson Ave | |

| 13d Additional address line (room or suite no.) | 22 Recipient account number (optional) |
|---|---|
| Apt 5A | 17426 |

| 13e City or town, province or state, country, ZIP or foreign postal code | 23 State income tax withheld | 24 Payer's state tax no. | 25 Name of state |
|---|---|---|---|
| Bronx  NY  10453 | 10500.00 | | CA |

For Privacy Act and Paperwork Reduction Act Notice, see page 17 of the separate instructions.  Cat. No. 11386R  Form **1042-S** (2011)

*Pursuant to IRS Central Withholding Agreement

# EXHIBIT K

**Required Disclosures by a Promoter to a Boxer**
(as required by Section 13 of the Muhammad Ali Reform Act)

This is disclosed only to the boxers with whom the promoter has a promotional contract. This does not have to be disclosed to the Pennsylvania State Athletic Commission, but may be required to be disclosed to the Office of Attorney General for the Commonwealth of Pennsylvania. Also you, as the promoter, would only disclose dollar amounts to those boxers "primarily" responsible for generating the income. Gate receipts would be disclosed to all boxers. For site fees, if your contract states that the site fee is only for the two main events (four boxers), then this revenue would be disclosed only to these four boxers.

**Name of Boxer:** _____
**Date of the Event:** _____
**Location of the Event:** _____

** Boxers Purse: _____     Any Deductions to this Purse:_____
  If any Deductions please list and explain each Deduction:

  As the promoter of the above named event I have received the following compensations or considerations resulting from your match.

| ITEM | $ AMOUNT RECEIVED | Received from |
|------|-------------------|---------------|
| Site Fee | | |
| TV Revenue | | |
| Pay-per-View | | |
| Ticket Sales | | |
| Advertising | | |
| Other (describe) | | |

* Because you as the promoter may not have exact figures, (for example PPV buys) you should use your best estimates at the time of disclosure and then follow up with actual figures to your Boxer.

_____     _____     _____
Boxer's Signature                   Promoter's Signature                Date